IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 21-cv-

MOUREENE TAYLOR,

    Plaintiff,

vs.

KAISER FOUNDATION HEALTH PLAN OF COLORADO,

    Defendant.

## COMPLAINT AND JURY DEMAND

Plaintiff Moureene Taylor, by her attorney Robert M. Liechty of ROBERT M LIECHTY PC, brings her complaint as follows:

    1.    Plaintiff Moureene Taylor lives in Bremerton, Washington. She used to work for defendant Kaiser in the Denver area.

    2.    She filed a charge with the EEOC and received her right to sue letter from the EEOC on October 8, 2020. She has timely filed her complaint in this Court and this Court has jurisdiction and venue over the complaint.

    3.    She worked as a massage therapist for Kaiser's Center for Complementary Medicine from February, 2018, to May, 2019. Plaintiff worked under a union contract. The unit had nine massage therapists who worked in conjunction with chiropractors and acupuncturists at some seven Kaiser locations throughout the Denver area. The massage-therapy unit was disbanded on May 31, 2019. Plaintiff brings a

claim for working in a hostile work environment, not for a discriminatory termination, except for failure to pay her the severance that others received as described below.

4. One of plaintiff's patients was interested in how acupuncture might help her. Plaintiff introduced the patient to Dallas Cox, an acupuncturist at that Center, who curtly told the patient, in front of plaintiff, "You are going to see her [plaintiff] until you realize it doesn't work," and then he walked away. This was extremely demeaning to plaintiff.

5. On April 5, 2018, Mr. Cox told plaintiff, "We need to talk and you're going to listen." He demeaned her in this confrontation.

6. Plaintiff and Mr. Cox were discussing a scientific article pointing out that males and females react differently to the flu. For some unknown reason, Mr. Cox accused plaintiff of using the phrase "you people" in discussing this article, implying that plaintiff was making a racial categorization. The article had nothing to do with race.

7. In April and May, 2018, Mr. Cox's demeaning treatment of plaintiff caused her to have two migraine headaches, preventing her from working, and caused her to vomit while at work.

8. Mr. Cox sat back to back with plaintiff's desk, with a walkway going between the backs of their two chairs. In May, 2018, he intentionally put his coat and gym bag on her desk and chair, intimidating her from using her own desk. Plaintiff waited an hour until Jonathan Berkshire asked Mr. Cox to remove his coat and gym bag.

9. Plaintiff complained to Dr. Robert Smigelski, her supervisor and a chiropractor in the Center, about the gym-bag incident. Dr. Smigelski laughingly said that Mr. Cox had done it on purpose. Dr. Smigelski transferred plaintiff to the Midtown center.

10. In early September, 2018, the massage therapists decided to file a grievance against Kaiser because Kaiser was not providing them with breaks required under the law and, because of this, the massage therapists were suffering injuries. Some of the massage therapists were afraid of retaliation if they signed such a grievance and, consequently, the signing of the grievance would die at the various locations. To resolve this, plaintiff drove the grievance from location to location for signatures on her day off.

11. On September 20, 2018, staff and management had a hearing concerning this grievance. Besides two union representatives, only the two black massage therapists (plaintiff and Roberta Johnson) and one other therapist appeared at this hearing.

12. On September 27, 2018, and for months afterwards, both plaintiff and Roberta Johnson were intentionally not being included in invitations to staff meetings.

13. In November, 2018, both black employees were taken off the website as being providers at Kaiser.

14. Ms. Taylor first met Ms. DePicciotto, the department head and Dr. Smigelski's supervisor, after working at Kaiser for approximately two months. Plaintiff

only saw Ms. DePicciotto occasionally until after the above grievance hearing, when plaintiff would see Ms. DePicciotto approximately weekly.

15. Dr. Smigelski's attitude toward plaintiff changed in November, 2018. Previously, he had called plaintiff "Moureene," but, thereafter, he called her "Ms. Taylor." He also began communicating with her via her personal cell phone so that his communications would not be traceable on company e-mail.

16. The only other black massage therapist, Roberta Johnson, filed a union grievance of harassment in December, 2018. Her union steward, Pat Johnson, told her that the conduct was not mere harassment but that it was racial discrimination based upon the steward's knowledge of other racial discrimination at Kaiser.

17. Roberta Johnson asked plaintiff to join the grievance, but plaintiff declined because she did not want to cause problems and she hoped that the discrimination would fade away. Ever since Roberta Johnson filed that grievance, both black employees have felt increased racial discrimination.

18. Ms. DePicciotto was extremely irritated with the race grievance brought by Ms. Johnson. After that hearing, when she greeted plaintiff, she would "sing out" her name in a saccharine manner. In approximately December, Ms. DePicciotto began monitoring plaintiff's emails.

19. In November, 2018, plaintiff's managers, Dr. Smigelski and his supervisor, Melissa DePicciotto, refused to address the two black employees when they walked into a group meeting. In Ms. Johnson's racial-grievance hearing, Ms. DePicciotto told Ms. Johnson that "I just don't know how to talk to you people."

20. In approximately November-December, 2018, plaintiff was working at the Midtown location on a Saturday. Dr. Clemenson, a medical doctor and acupuncturist with the Center, was in the kitchen working as a volunteer filling bags with food for people who needed the food. Plaintiff was working across the hall with a patient. Dr. Clemenson was making too much noise in the kitchen and plaintiff asked him to try to be more quiet because of her patient. He sneered at her and slammed the door in her face.

21. Also in approximately November-December, 2018, Ms. DePicciotto removed a poster of the Kaiser CEO, who was black, from a provider's treatment room. The person who put up the poster, a chiropractor by the name of Patrick, saw no other reason for removing the poster except that the man in the poster was black.

22. As of mid-November, 2018, plaintiff was feeling overwhelmed by the daily racial tension at work. It would not have been so bad if all the employees had been treated poorly; what made it unbearable was the fact that the tension was addressed to plaintiff only. Because she and the other black therapist, Ms. Johnson, never worked together, plaintiff did not see how Ms. Johnson was being treated.

23. Plaintiff was not sleeping and would often cry. She suffered stress migraines and vomited approximately four times while at work. Since leaving Kaiser, she has had no stress migraines nor has she vomited at work.

24. On February 21, 2019, personal items were removed from plaintiff's desk although other employees were allowed to have personal items.

25. In February-March, 2019, plaintiff was not allowed to substitute for massage therapists who were sick or away from work. The union stopped this conduct because it was in plaintiff's contract that that is precisely what she was supposed to do.

26. Management told the massage therapists in a meeting on March 27, 2019, that the hospital was disbanding the massage therapists. Just after management left the room, Cori West, a massage therapist, yelled, "It's your and Roberta's fault because you were too much for management." Later, Ms. West yelled at plaintiff, "I will not let you speak." Management received reports from several employees of this misconduct, but Ms. West received no discipline.

27. Shortly after this meeting, Dr. Smigelski issued a Joint Objective Discovery (JOD) against plaintiff because she received a patient complaint. A JOD is Kaiser's first level of written discipline. On the same day, she received a second JOD for being behind in her patient notes. Her union steward said that he had never seen a JOD for either one of these alleged infractions. Because it was already determined that all of the massage therapists would be let go within the next two months, such a JOD was done simply for harassment.

28. Prior to dismantling the group, a representative from a Kaiser hospital in Seattle came to Denver to study the Center for Complementary Medicine. Ms. DePicciotto stopped plaintiff from meeting with this representative. Nonetheless, plaintiff obtained the representative's card and looked up her contact information and gave it to chiropractor Bussa.

29. Both he and plaintiff called Seattle and Mr. Bussa received an immediate response. The Kaiser Seattle representatives never responded to plaintiff. The Seattle hospital offered a job to Mr. Bussa, but never even contacted plaintiff, even after her second attempt to contact them.

30. Dr. Smigelski consults with the Seattle group and prevented plaintiff from obtaining employment with them.

31. All the full-time massage therapists received severance of approximately $45,000, depending on their salary. Although plaintiff was hired as a part-time employee, she worked over 32 hours per week for three consecutive months prior to the termination of the massage therapists. According to the union contract, she was entitled to the $45,000 severance.

32. The union representative, Sun, told plaintiff both before and after May 31, 2019, that plaintiff would get the severance. Plaintiff spoke to HR who told plaintiff that because her department did not approve the severance, she would not get it. Plaintiff never received the severance.

### *Hostile Work Environment*

33. The above-described, racially-oriented conduct was sufficiently severe or pervasive as to alter the conditions of plaintiff's employment and create an abusive working environment.

34. Plaintiff perceived this work environment as being abusive as evidenced by her migraine headaches, vomiting at work, and lack of sleep.

35. Such an abusive work environment violates Title VII, 42 USC §2000e-2(a)(1).

36. Plaintiff is entitled to compensation for these losses under 42 USC §1981A(b).

37. She is also entitled to punitive damages under 42 USC §1981A(b)(1) because Kaiser engaged in this discriminatory practice with malice or reckless indifference to Ms. Taylor's federally protected rights.

38. Finally, Ms. Taylor is entitled to her attorney's fees and costs pursuant to 42 USC §2000e-5(k).

### *Discriminatory Failure to Pay Severance*

39. Under the union contract, plaintiff was entitled to receive a $45,000 severance payment upon her separation of employment.  Despite her right to this payment, because of plaintiff's race and her attempts to assert her rights under Title VII, Kaiser did not pay her the severance.

40. This violates Title VII, 42 USC §2000e-2(a)(1).

41. Plaintiff is entitled to the severance of $45,000 compensatory damages, and for attorneys fees under §1981A(b) and §2000e-5(k), respectively.

42. She is also entitled to punitive damages under 42 USC §1981A(b)(1) because Kaiser engaged in this discriminatory practice with malice or reckless indifference to Ms. Taylor's federally protected rights.

WHEREFORE, plaintiff Moureene Taylor respectfully requests that this Court enter judgment in her favor and for costs, interest, attorney's fees, and such other relief as this Court may deem proper.

Plaintiff requests trial to a jury.

Respectfully submitted this January 4, 2021.

By: s/ *Robert M. Liechty*
Robert M. Liechty
ROBERT M LIECHTY PC
1800 Gaylord St.
Denver, Colorado 80206
Tel: (303) 861-5300
Fax: (303) 861-2746
Email: rliechty@crossliechty.com
ATTORNEY FOR PLAINTIFF

Address of Plaintiff:
100 Sheridan Rd., Apt. 305
Bremerton, WA 98310